**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF PUERTO RICO**

**VICTOR RODRIGUEZ-DEYNES,**

    Plaintiff,

     v.

**EDWARD MORENO-ALONSO, ET AL.,**    CIV. NO. 16-2986 (PG)

    Defendants.

## OPINION AND ORDER

Plaintiff Victor Rodriguez-Deynes ("plaintiff") files suit under 42 U.S.C. § 1983 and three local statutes. See Docket No. 3. Defendant Edward Moreno-Alonso ("defendant" or "Moreno-Alonso") moves to dismiss. See Docket No. 9. Plaintiff opposes. See Docket No. 21. For the reasons set forth below, the court **GRANTS AND DENIES IN PART** defendant's motion to dismiss.

### I.  BACKGROUND

Plaintiff took the position of Academic Director at the Escuela Libre de Música Ernesto Ramos Antonini ("the school") on September 3, 2008. See Docket No 3 at 3. He alleges the school suffered from a litany of staffing, funding and infrastructure problems at that time. See id. In February of 2010, plaintiff purportedly became aware of the Department of Education's (or "the department") plan to move the school to a new location. See id. at 5. To address the school's problems, and to oppose relocation, plaintiff claims he made numerous expressions between 2009 and 2011. See id. at 5-8.[1]

Plaintiff posits that, in retaliation, defendant – the Secretary of Education from 2011 to 2012 – intentionally coordinated a scheme of false accusations and frivolous complaints filed in state court. See id. at 7. Plaintiff also maintains that, in or around May of 2010, several individuals acting

---

[1] The individual instances of speech will be discussed in detail below.

in concert with defendant called and visited him in an effort to intimidate and "pressure" him. See id. at 8. Plaintiff further alleges that defendant and codefendant Jesus Rivera-Sanchez ("codefendant" or "Rivera-Sanchez") – the Secretary of Education from 2010 to 2011 – fabricated a disciplinary record against him. See id. Then, plaintiff avers, he was notified he had been summarily suspended – albeit with pay – on October 7, 2011. See id. at 7.[2]

On July 24, 2012, defendant was reinstated to his position, as "Academic Director of the School District of San Juan I." Id. at 10. However, he was transferred from the school to the Rafael Cordero Specialized School ("Rafael Cordero"), within the same district. Plaintiff worked at Rafael Cordero for four days, before leaving to seek medical attention. See id. at 11.

Plaintiff filed an initial complaint in state court on September 26, 2012. See Docket No. 21 at 28. On November 16, 2016, plaintiff sued defendant and co-defendant, in their individual capacities, in this court.[3] See Docket No. 1. Almost two months later, plaintiff filed an amended complaint ("the complaint"). See Docket No. 3. Defendant moves to dismiss. See Docket No. 9.

## II. STANDARD OF REVIEW

Federal Rule of Civil Procedure 12(b)(6) authorizes the dismissal of a complaint that fails to state a claim upon which relief could be granted. "To avoid dismissal, a complaint must provide 'a short and plain statement of the claim showing that the pleader is entitled to relief.'" Garcia-Catalan v. United States, 734 F.3d 100, 102 (1st Cir. 2013) (quoting Fed. R. Civ. P. 8(a)(2)). When ruling on a motion to dismiss for failure to state a claim, a district court must "ask whether the complaint states a claim to relief that is plausible on its face, accepting the plaintiff's factual allegations and drawing all reasonable inferences in the plaintiff's favor." Cooper v. Charter Communications Entertainments I, LLC, 760 F.3d 103, 106 (1st Cir. 2014) (citing Maloy v. Ballori-Lage, 744 F.3d 250, 252 (1st Cir. 2014)) (internal quotations marks omitted).

---

[2] Plaintiff was notified of his right to an administrative hearing, which he exercised. See id. at 7; 10.
[3] Plaintiff also sues other, unknown individuals. See id. at 2-3.

"To cross the plausibility threshold, the plaintiff must 'plead factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged.'" Cooper, 760 F.3d at 106 (citing Maloy 744 F.3d at 252). See also Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009). That is, "[f]actual allegations must be enough to raise a right to relief above the speculative level, … , on the assumption that all the allegations in the complaint are true (even if doubtful in fact) … ." Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 555 (2007) (internal citations omitted). "Non-conclusory factual allegations in the complaint must then be treated as true, even if seemingly incredible." Ocasio-Hernandez v. Fortuno-Burset, 640 F.3d 1, 12 (1st Cir. 2011).

### III.   DISCUSSION

**A.  Plaintiff's Claims Under 42 U.S.C. § 1983**

Plaintiff claims that defendant, acting under the color of state law, infringed upon his rights under the First and Fourteenth Amendments of the Constitution of the United States, in violation of 42 U.S.C. § 1983. See Docket No. 3 at 12.

Section 1983 does not create substantive rights, but rather provides a cause of action through which a plaintiff can vindicate federal rights elsewhere conferred. See Albright v. Oliver, 510 U.S. 266, 271 (1994).  To state a claim under § 1983, plaintiff must allege that defendant acted under color of state law and deprived him of a protected federal right. See Rogan v. City of Boston, 267 F.3d 24, 27 (1st Cir. 2001).

Defendant moves to dismiss plaintiff's claims. See Docket No. 9. He argues plaintiff suffered no such breach of his federal rights because all purported actions fell within constitutional bounds. See id. at 3-11. To boot, defendant posits that at least some of plaintiff's claims are time-barred. See id. at 11-13.

*i. Regarding First Amendment Retaliation*

Working for the government does not strip a person of all First Amendment protection. See Foley v. Town of Randolph, 598 F.3d 1, 5 (1st Cir. 2010). See also Decotiis v. Whittemore, 635 F.3d 22, 29 (1st Cir. 2011). At the same time, "a citizen who accepts public employment must accept

certain limitations on [their] freedom." <u>Borough of Duryea, Pa. v. Guarnieri</u>, 564 U.S. 379, 386 (2011) (citations omitted).[4] Ergo, the "protection that public employees enjoy against speech-based reprisals is qualified." <u>McGunigle v. City of Quincy</u>, 835 F.3d 192, 202 (1st Cir. 2016) (citing <u>Mercado-Berrios v. Cancel-Alegria</u>, 611 F.3d 18, 26 (1st Cir. 2010); <u>Garcetti v. Ceballos</u>, 547 U.S. 410, 418 (2006)).

Plaintiff alleges that defendants "retaliat[ed] against [him] for his exercise of his rights under the First Amendment." Docket No. 3 at 12. Defendant moves to dismiss. <u>See</u> Docket No. 9 at 3-7. He argues the First Amendment affords plaintiff – a public employee – no shelter here. <u>See</u> <u>id.</u> Defendant avers, concerning the eight instances of speech presently in question, that plaintiff does not plausibly plead he engaged in protected speech. <u>See</u> <u>id.</u>[5]

Thus, the court must settle whether plaintiff plausibly pleads that he spoke as a citizen on a matter of public concern, rather than as a public employee. <u>See</u> <u>Decotiis</u>, 635 F.3d at 35. If plaintiff spoke as a public employee, no constitutional protections attach. <u>See</u> <u>Garcetti</u>, 547 U.S. at 421 ("when public employees make statements pursuant to their official duties, the employees are not speaking as citizens for First Amendment purposes, and the Constitution does not insulate their

---

[4] "When someone who is paid a salary so that [they] will contribute to an agency's effective operation begins to do or say things that detract from the agency's effective operation, the government employer must have some power to restrain [them]." <u>Guarnieri</u>, 564 U.S. at 386–87 (quoting <u>Waters v. Churchill</u>, 511 U.S. 661, 675 (1994) (plurality opinion)).

[5] For the most part, plaintiff supports his response to defendant's motion to dismiss with cases decided in or before 2003. <u>See</u> Docket No. 21 at 16-20. He therefore essentially eschews <u>Garcetti</u> (decided in 2006) and its progeny, which shifted the relevant legal landscape by establishing that public employees may be shielded by the First Amendment when they speak as citizens but never when they speak as public employees (plaintiff briefly cites <u>Garcetti</u> twice, <u>see</u> <u>id.</u> at 19, but sidesteps that decision's core holding). To boot, plaintiff calamitously miscites <u>Bolduc v. Town of Webster</u> – the single post-<u>Garcetti</u> decision in his brief – in a pivotal manner. <u>Compare</u> Docket No. 21 at 16 (citing <u>Bolduc</u>, 629 F. Supp. 2d 132, 145 (D. Mass. 2009)) (proposing that the first prong of the relevant inquiry is "that [plaintiff] spoke on a matter of public concern"), <u>with</u> <u>Bolduc</u>, 629 F. Supp. 2d at 145 (proposing that the same prong is actually "that [plaintiff] spoke **as a citizen** on a matter of public concern" (emphasis added)).

Accordingly, plaintiff's brief does not accurately reflect the current state of law on the matter before the court. Indeed, it appears plaintiff would have the court ignore over ten years of good law and hold the First Amendment protects him even if he spoke as a public employee, as longs as the subject matter of his expressions is of public concern. The court takes issue with such briefing practices, which could be interpreted as attempts to mislead the court. In effect, plaintiff neither briefed the court on the matter before it nor refuted defendant's arguments. Plaintiff (and his counsel) would do well to mind this admonition when briefing this court in the future.

communications from employer discipline"). But, if plaintiff spoke as a citizen on a matter of public concern, the First Amendment may shield him.[6] See <u>Lane v. Franks</u>, 573 U.S. 228, 237 (2014).

To determine whether plaintiff took off his "employee hat" and put on his "citizen hat," the court must establish his official duties and assess whether the speech in question was made pursuant to those duties. <u>Decotiis</u>, 635 F.3d at 31. <u>See also</u> <u>O'Connell v. Marrero-Recio</u>, 724 F.3d 117, 123 (1st Cir. 2013). The inquiry calls for a "practical rather than formal" approach. <u>Decotiis</u>, 635 F.3d at 31 (such an inquiry focuses on "the duties the employee is actually expected to perform").  After defining the public employee's official duties, contextual clues help the court zero in on the nature of the expression under consideration. <u>See</u> <u>id.</u> at 32; <u>Mercado-Berrios</u>, 611 F.3d at 27 n.9 (quoting <u>Garcetti</u>, 547 U.S. at 421-23).[7]

Today, the court will consider simply if "the complaint alleges facts that plausibly set forth citizen speech." <u>See</u> <u>Decotiis</u>, 635 F.3d at 35 (citing <u>Sepulveda-Villarini v. Dep't. of Educ. Of P.R.</u>, 628 F.3d 25, 30 (1st Cir. 2010)). [8]  Nunc incipimus:

---

[6] First Amendment protection may falter at a later stage of the relevant multi-step inquiry. <u>See</u> <u>Barton v. Clancy</u>, 632 F.3d 36, 45 (1st Cir. 2011). The court will not reach those stages today.

[7] Speech is more likely to be spoken as a public employee when it "owes its existence to ... professional responsibilities," when the employer "commissioned or created" the employee's speech,  when the employee was "paid to make" the expressions, when the employee's "duties required him to make" the expressions, when the speech "amounts to ... work product," and when the speech "is an official communication." <u>Mercado-Berrios</u>, 611 F.3d at 27 n.9 (quoting <u>Garcetti</u>, 547 U.S. at 421-23). Additional factors include:

> the subject matter of the speech; whether the speech was made up the chain of command; whether the employee spoke at [their] place of employment; whether the speech gave objective observers the impression that the employee represented the employer when [they] spoke; whether the employee's speech derived from special knowledge obtained during the course of [their] employment; and whether there is a so-called citizen analogue to the speech.

<u>Decotiis</u>, 635 F.3d at 32 (internal citations omitted).

[8] To be sure, "navigating the shoals" of the <u>Garcetti</u> standard is often "tricky business" – "particularly so in the context of a motion to dismiss, because the inquiry is so fact intensive and context specific." <u>Decotiis</u>, 635 F.3d at 26. <u>Cf.</u> <u>Hill v. Borough of Kutztown</u>, 455 F.3d 225, 242–43 (3d Cir. 2006) (quoting <u>Rankin v. McPherson</u>, 483 U.S. 378, 384 (1987)) (stating that the motion to dismiss "procedural posture" precluded determining whether speech was a matter of public concern in that case). Still, some courts have been able to execute the full <u>Garcetti</u> analysis at the motion to dismiss stage. However, even on Rule 12(b)(6) review, most of them were informed by abundant records. That is not the case here. Engaging in the full <u>Garcetti</u> inquiry on a meager informational background can be hazardous. The test requires balancing numerous non-dispositive factors. Austere allegations and a scant record can gull the reviewer into placing far more weight than appropriate on the few non-dispositive factors that are discernible from the face of the complaint, potentially skewing the scales towards mistaken outcomes.

The court will steer clear of that pitful today. Conducting the run-of-the-mill <u>Garcetti</u> test is nothing short of an impossibility on the record currently before the court. However, "the scope of our review on a motion to dismiss does not demand as much ..." <u>Decotiis</u>, 635 F.3d at 35.

*1.  Expressions at the Parent's Assembly*

Plaintiff alleges that "as part [sic] plaintiff's endeavor he naturally made certain relevant expressions in official activities such as the assembly of parents." Docket No. 3 at 5. See also id. at 7 ("... [plaintiff] reported on [sic] the Parent's Assembly on September 7, 2011..."). That allegation does not set forth facts that plausibly posit plaintiff engaged in citizen speech when he spoke at the Parent's Assembly. On the contrary: the complaint characterizes the assembly as an "official activit[y]." That characterization, while not dispositive, weighs against plaintiff. See Decotiis, 635 F.3d at 33 (citing Foley, 598 F.3d at 7) ("speech made to an audience to which an employee only has access through [their] job is generally less akin to citizen speech"); Foley 598 F.3d at 6-8 (discussing "official speech"); n.7, *supra*. In the absence of **any** other pleaded facts, the court must dismiss plaintiff's First Amendment claim as pertaining to the expressions he made at the Parent's Assembly. No inferences can be made in favor of plaintiff - there are no pleaded facts from which to infer that he engaged in citizen speech. See Cooper, 760 F.3d at 106 (citing Maloy, 744 F.3d at 252).[9] Thus, the court **GRANTS** defendant's motion as to plaintiff's claims regarding his expressions at the Parent's Assembly. They are **DISMISSED WITHOUT PREJUDICE**.

*2.  Open Letter and Expressions to NotiCel*

Plaintiff alleges he "wrote an open letter addressed to the school community stating the magnitude of these problems and indicating the need of [sic] additional resources." Docket No. 3 at 5. See also id. at 7 ("[plaintiff] wrote an Open Letter to the Parents and to the Secretary of Education September 20, 2011"). Thus, the court must consider another bare-bones allegation. Indeed, when broken down, the allegation posits only four facts: (1) plaintiff wrote an open letter, (2) on September 20, 2011, (3) to the school community,[10] (4) about the school's problems and the

---

[9] Defendants move to dismiss only on the grounds that plaintiff spoke as an employee rather than as a citizen at the time he made the expressions in question. See Docket No. 9 at 3-7. The court will only review plaintiff's allegations to the extent defendant has levied arguments against them. See Rodriguez v. Municipality of San Juan, 659 F.3d 168, 175 (1st Cir. 2011) ("Judges are not mind-readers, so parties must spell out their issues clearly, highlighting the relevant facts and analyzing on-point authority.")

[10] Plaintiff also alleges the same letter was addressed to "the Parents and the Secretary of Education..." Docket No. 3 at 7.

need for resources. Still, plaintiff plausibly pleads – by the skin of his teeth – facts that set forth citizen speech. He alleged that the letter was an **open letter**, for which there exists plenty of analogous citizen speech (anyone can pen an open letter, and private citizens often do so). See Garcetti, 547 U.S. at 422 (stating that expressions are more likely to be made as a citizen, rather than as an employee, when there is analogous citizen speech). See also Stuart v. Town of Framingham, 301 F. Supp. 3d 234, 241 (D. Mass. 2018) (citing Decotiis, 635 F.3d at 32). While other considerations could weigh against plaintiff, they cannot be factored into the analysis without first drawing inferences in defendant's favor. See n.7, *supra*. Such inferences are inappropriate at this stage. See Cooper, 760 F.3d at 106 (citing Maloy, 744 F.3d at 252). Thus, plaintiff plausibly pleads that his open letter was citizen speech.

Plaintiff also alleges he "contacted NotiCel and anticipated [sic] to the media that the administration planned to dismiss him in retaliation for his strong position [sic] 'Remodeling yes, moving no' movement." Docket No. 3 at 7. For the same reasons detailed above (discussing the open letter), plaintiff plausibly pleads that he spoke as a citizen when he contacted NotiCel.  See Garcetti, 547 U.S. at 422 ("letter to the newspaper had no official significance and bore similarities to letters submitted by numerous citizens every day"); Decotiis, 635 F.3d at 32. Private citizens can, and frequently do, make expressions to news media outlets (such as NotiCel).  Therefore – because there is a citizen analogue to the speech in question – plaintiff plausibly pleads that he spoke as a citizen to NotiCel. Cf. Foley, 598 F.3d at 9 (citing McLaughlin v. City of Nashville, Civil No. 06–4069, U.S. Dist. LEXIS 78133, at *8–9 (W.D.Ark. Oct. 23, 2006); Hailey v. City of Camden, Civil No. 01–3967, 2006 WL 1875402, at *16 (D.N.J. July 5, 2006)). See also Gibson v. Kilpatrick, 773 F.3d 661, 670 (5th Cir. 2014); Perkins v. Twp. of Clayton, 411 F. App'x 810, 814 (6th Cir. 2011) ("right to speak to the press was well established"). But see Gibson, 773 F.3d at 670 ("when an employee's official duties include communicating with ... the press, it would be in dissonance with Garcetti to conclude that, when [they do] so, [they enjoy] First Amendment protection"); Bearss v. Wilton, 445 F. App'x 400, 403 (2d Cir. 2011).

Thus, the court **DENIES** defendant's motion to dismiss as to plaintiff's claims regarding the open letter and the expressions made to NotiCel.

### 3.  E-mails

Plaintiff alleges he "sent around a dozen e-mails to the former Special Assistant to the Secretary of Education defendant Moreno-Alonso." Docket No. 3 at 5. This allegation is far too bare to surmount Rule 12(b)(6) scrutiny. Nothing in the complaint suggests such speech would fall under First Amendment protection. Far the opposite, the only discernible, tangible fact relevant to this analysis is that plaintiff sent communications up the chain of command to the Secretary of Education's assistant. That a public employee spoke up the chain of command suggests he spoke as an employee rather than as a private citizen. See Decotiis, 635 F.3d at 32; Gibson, 773 F.3d at 670; Bettencourt v. Town of Mendon, 334 F. Supp. 3d 468, 485 (D. Mass. 2018). Plaintiff is damningly silent as to any other considerations that could be factored into the inquiry.

Plaintiff also alleges that he "sent an e-mail to [codefendant] inquiring about what he correctly perceived as a malicious 'conspiracy' to remove him." See Docket No. 3 at 7. This second allegation is crippled by the same fatal flaw as the first. Here, too, plaintiff alleges he spoke up the chain of command, directly to the Secretary of Education. See Decotiis, 635 F.3d at 32 (speaking up the chain of command suggests employee speech); Gibson, 773 F.3d at 670; Bettencourt, 334 F. Supp. 3d at 485. To boot, the subject matter of the e-mail also pertains to plaintiff's employment. See Cruz v. Puerto Rico Power Auth., 878 F. Supp. 2d 316, 326 (D.P.R. 2012).[11] Thus, the complaint's factual allegations do not set forth that plaintiff spoke as a citizen in his e-mail to codefendant.

---

[11] While the court will not consider whether plaintiff pleads speech on matters of public concern, see n.9, *supra*, the court notes that "public concern is not usually involved when speech rights are invoked in connection with individual workplace disputes and grievances... The First Amendment does not empower public employees to constitutionalize ordinary employee grievances." LaSalle v. Puerto Rico Elec. Power Auth., 144 F. Supp. 3d 274, 279 (D.P.R. 2015) (internal citations omitted). See also Shattuck v. Potter, 441 F. Supp. 2d 193, 200 (D. Me. 2006) (quoting O'Connor v. Steeves, 994 F.2d 905, 914 (1st Cir.1993)) (where a public employee sent a private communication, "the form of [their] expression [did] not demonstrate any 'subjective intent to contribute to any ... public discourse'").

Again, no inferences can be made, from these allegations, in favor of plaintiff - there are no pleaded facts from which to infer that he engaged in citizen speech. See Cooper, 760 F.3d at 106 (citing Maloy, 744 F.3d at 252). As such, plaintiff fails to plausibly plead that he engaged in citizen speech when he sent e-mails to the Special Assistant to the Secretary of Education and to the Secretary of Education. Therefore, the court **GRANTS** defendant's motion as to plaintiff's claims regarding the e-mails. They are thus **DISMISSED WITHOUT PREJUDICE**.

*4.  OMEP and OSHA Complaints*

Plaintiff alleges he sent "persistent messages and letters to the Director of the Office [sic] Improvement for [sic] Public Schools (OMEP) denouncing the poor maintenance and conservation of the School." Docket No. 3 at 5. He further pleads that, "after seeing that OMEP did not attend [sic] his claims, he had no alternative that [sic] to present a grievance in [sic] OSHA[12] in connection to the unsanitary and unsafe conditions of the School." Id.

The court will address the OSHA grievance first. Plaintiff alleges he made complaints to OSHA, a federal agency outside of the Puerto Rico Department of Education. Because OSHA is an external agency outside of plaintiff's chain of command, he sets forth facts that plausibly plead he engaged in citizen speech when he filed those complaints. See Thomas v. Town of Salisbury, 134 F. Supp. 3d 633, 644 (D. Mass. 2015) (complaints made to the city manager, outside the police department's chain of command, persuaded the court of citizen speech); Cruz v. Puerto Rico Power Auth., 878 F. Supp. 2d 316, 325–26 (D.P.R. 2012) (speech made to OSHA favors a conclusion of citizen speech). See also   Gibson, 773 F.3d at 670 (quoting Davis v. McKinney, 518 F.3d 304, 313 (5th Cir. 2008)) ("external communications are ordinarily not made as an employee, but as a citizen"); Dahlia v. Rodriguez, 735 F.3d 1060, 1077 (9th Cir. 2013) (plaintiff spoke as a citizen when he spoke outside the chain of command to an external agency); Reinhardt v. Albuquerque Pub. Sch.

---

[12] OSHA is the acronym for the Occupational Safety and Health Administration, an agency of the United States Department of Labor.

Bd. of Educ., 595 F.3d 1126, 1137 (10th Cir. 2010) ("filing a complaint with an agency outside a plaintiff's direct chain of command is not pursuant to official duties, but rather is the speech of a private citizen"(quotations omitted)).

Still, speech made to external agencies can nonetheless constitute employee speech when intrinsically related or pursuant to employment duties. See Rohrbough v. Univ. of Colorado Hosp. Auth., 596 F.3d 741, 750 (10th Cir. 2010) (speech made to outside agency which was required by employment duties "presents a closer question"); Alvarez v. Staple, 345 F. Supp. 3d 320, 333-34 (S.D.N.Y. 2018) (collecting cases and stating that public school teachers can speak as employees when complaining about school district policies and procedures to external agencies outside chain of command); Harris v. Bd. of Educ., 230 F.Supp.3d 88, 102 (E.D.N.Y. 2017) (filing complaint "to ensure the welfare of students is a duty of a teacher and in furtherance of the execution of one of her core duties" (quotations omitted)); Ross v. New York City Dept. of Educ., 935 F.Supp.2d 508 (E.D.N.Y. 2013) (teacher's complaints to teacher's union and OSHA about conditions of school gym were not citizen speech). Cf. Gibson, 773 F.3d at 671 (complaints to "law enforcement officers at the outside agencies whom he had met through his official duties" were not citizen speech). As will be explained below when discussing the OMEP complaints, the subject matter of the OSHA grievance (the safety and conditions of the teaching environment) is intimately related to plaintiff's work duties. Thus, plaintiff sets forth facts that suggest both citizen and employee speech: (1) that plaintiff spoke to an external agency outside the chain of command favors a finding of citizen speech, while (2) that the subject matter of the expressions was closely linked to plaintiff's work duties favors a finding of employee speech.

The court cannot make inferences against plaintiff at this stage. See Cooper, 760 F.3d at 106 (citing Maloy, 744 F.3d at 252). Similarly, the court will not weigh the discernible Garcetti factors now. Remembering that no single Garcetti factor, see n.7, *supra*, is by itself dispositive, is critical to the inquiry. Indeed, the complaint's allegations include enough for this court to find that plaintiff **could have** spoken as a citizen, without testing the scales – though it is very likely he spoke as an

employee. See Ocasio Hernandez, 640 F.3d at 12-13 (citing Twombly, 550 U.S. at 556) (the court may not "attempt to forecast a plaintiff's likelihood of success..."). Namely, plaintiff sets forth that he spoke outside of the chain of command to an external agency. As such, plaintiff plausibly pleads that he engaged in citizen speech when he filed his grievance with OSHA. Thus, defendant's motion to dismiss as it pertains to plaintiff's complaints to OSHA is **DENIED**.

Whether plaintiff plausibly pleads he spoke as a citizen when he sent "persistent messages and letters" to OMEP tenders a tighter query. Unlike OSHA, OMEP is not an external agency well outside plaintiff's chain of command, but instead an internal office within the Department of Education – for whom plaintiff worked. That fact lands plaintiff in deep water. Cf. Alvarez, 345 F. Supp. 3d at 332. See also Mercado-Berrios, 611 F.3d 18 at 27-28. The only other relevant fact set forth in the allegation is the subject matter of the expressions, which does not lean towards plaintiff's position.

"Under the First Amendment, speech can be 'pursuant to' a public employee's official job duties even though it is not required by, or included in, the employee's job description, or in response to a request by the employer." Weintraub v. Bd. of Educ. of City Sch. Dist. of City of New York, 593 F.3d 196, 203 (2d Cir. 2010). See also Mercado-Berrios, 611 F.3d 18 at 26, n.8; Foley, 598 F.3d at 6; Phillips v. City of Dawsonville, 499 F.3d 1239, 1242 (11th Cir.2007). Plaintiff alleges he complained to OMEP about "the poor maintenance and conservation of the School," which the complaint links to "unsafe and unsanitary conditions" at the school. Docket No. 3 at 5. Though complaining to OMEP about the school's "maintenance" and "conservation" may have not necessarily been a part of plaintiff's official work duties, the school's physical condition is so inherently related to the performance of plaintiff's duties as an academic director and educator that any expressions pertaining thereto would necessarily be made pursuant to plaintiff's work duties. C.f. Weintraub, 593 F.3d at 202-03. [13] See also Mercado Berrios, 611 F.3d at 27 (citing Winder v.

---

[13] (citing Renken v. Gregory, 541 F.3d 769, 773 (7th Cir.2008) (professor's complaint regarding educational grant was employee speech because the grant was "for the benefit of students" and "aided in the fulfillment of his

Erste, 566 F.3d 209, 215 (D.C.Cir.2009)) ("complaints like [plaintiff's] might be unprotected, since they could be said to facilitate job performance..."); Alvarez, 345 F. Supp. 3d at 333-34; Harris, 230 F.Supp.3d at 102; Ross, 935 F.Supp.2d 508; Massaro v. The Dep't of Educ. of the City of New York, No. 08 CIV.10678 LTS FM, 2011 WL 2207556, at *4 (S.D.N.Y. June 3, 2011), aff'd sub nom. Massaro v. New York City Dep't of Educ., 481 F. App'x 653 (2d Cir. 2012) ("Classroom safety, the practical availability of proper teaching space and the teacher's ability to perform [their] duties in the space are ... indispensable prerequisites to effective teaching and classroom learning. Communications ... [regarding] such matters are, thus, part and parcel of a teacher's duties as a public employee and do not enjoy First Amendment protection.").

In short, the conditions of the teaching environment are intrinsic to any pedagogic endeavor. This court holds that ensuring that the teaching environment is safe and apt is an obvious core duty of a public employee charged with the vital task of educating youth. Thus, the subject matter of the OMEP complaints tips the balance towards employee rather than citizen speech, because it is "part-and-parcel" of plaintiff's work duties.[14]

In the absence of any other pleaded facts, the court must dismiss plaintiff's First Amendment claim as they pertain to the complaints he filed with OMEP.  The subject matter of the complaints, coupled with the fact that the complaints were intra-agency communications, can lead the court to no other outcome. No inferences can be made in favor of plaintiff - there are no pleaded facts from which to infer that he engaged in citizen speech. See Cooper, 760 F.3d at 106 (citing Maloy, 744 F.3d at 252). Thus, the court **GRANTS** defendant's motion as to plaintiff's claims regarding his complaints to OMEP. They are **DISMISSED WITHOUT PREJUDICE**.

---

teaching responsibilities); Brammer–Hoelter v. Twin Peaks Charter Acad., 492 F.3d 1192, 1204 (10th Cir.2007) (speech regarding student behavior, curriculum, pedagogy, and classroom-related expenditures was made pursuant to teachers' employment duties); Freitag v. Ayers, 468 F.3d 528, 546 (9th Cir.2006); Battle v. Bd. of Regents, 468 F.3d 755, 761 (11th Cir.2006)).

[14] As the record develops, it is possible that the same subject matter analysis could later be applied to some of plaintiff's other expressions, possibly with the same results.

*5.   Complaints Against Board Members and Teachers*

Plaintiff pleads that "on September 26, 2011, [he] proceeded to submit to the Appointing Authority ([codefendant] Rivera-Sanchez) through the Office of the Legal Division of the Secretary of Education various issues regarding of [sic] regulatory violations of some members of the Board and teachers for breach of their responsibilities and duties that were against the best interests of the school community." Docket No. 3 at 7. This allegation does not set forth citizen speech. Instead, plaintiff establishes that he was speaking up the chain of command, to the Secretary of Education. See Decotiis, 635 F.3d at 32; Gibson, 773 F.3d at 670 ("one of the factors that we have considered is whether the employee's complaint was made within the chain of command or to an outside actor, such as a different government agency or the media"); Bettencourt, 334 F. Supp. 3d at 485. See also Docket No. 3 at 7 ("plaintiff proceeded to submit to [Rivera-Sanchez]"). Weighing the alleged subject matter of the complaints – the "breach of responsibilities and duties" plaintiff attributes to some Board members and teachers – does not save plaintiff's bacon. Indeed, the subject matter of the speech is not sufficiently unrelated to plaintiff's job as to support that he spoke as a citizen. See Cruz, 878 F. Supp. 2d at 326.

Plaintiff does not plead any other facts from which inferences in his favor could be made. See Cooper, 760 F.3d at 106 (citing Maloy, 744 F.3d at 252). Ergo, plaintiff failed to plausibly plead that he engaged in citizen speech when he made the complaints against the board members and teachers. As such, the court **GRANTS** defendant's motion as to plaintiff's claims regarding these complaints. They are thus **DISMISSED WITHOUT PREJUDICE.**

*ii. On the Applicability of Substantive Due Process*

Defendant does not challenge a substantive due process claim in his motion to dismiss. See Docket No. 9 at 7-11. Still, plaintiff argues in favor of one in his opposition thereto. See Docket No. 21 at 24-27. Nevertheless, it is unclear whether plaintiff even raises such a claim to begin with. Indeed, to the extent that plaintiff sets forth a Fourteenth Amendment cause of action in the

complaint, he pleads solely that "[the] process of summary suspension violated plaintiff's due process rights..." Docket No. 3 at 12. The focus on process urges the court down a road of procedural rather than substantive due process. See Mongeau v. City of Marlborough, 492 F.3d 14, 18 (1st Cir. 2007) (quoting Amsden v. Moran, 904 F.2d 748, 754 (1st Cir.1990) ("a substantive due process inquiry focuses on 'what' the government has done, as opposed to 'how and when' the government did it").

The court need not focus on whether plaintiff, in fact, brings a substantive due process claim. Such a claim – assuming, *arguendo*, one was brought – does not fare well here. "Substantive due process is an inappropriate avenue of relief when the governmental conduct at issue is covered by a specific constitutional provision." Pagan v. Calderon, 448 F.3d 16, 33–34 (1st Cir. 2006).[15] However, throughout his complaint, plaintiff repeatedly argues that he was summarily suspended in retaliation for expressions and complaints he made under First Amendment protection. See Docket No. 3 at 7-8; 11 (allegations No. 20, 22, 23 and 36 are particularly clear iterations of plaintiff's contention). Plaintiff's grievances therefore fall squarely under the purview of the First Amendment and cannot proceed under the guise of a Fourteenth Amendment substantive due process claim. See id. (citing Ruiz–Casillas v. Camacho–Morales, 415 F.3d 127, 134 (1st Cir.2005); Nestor Colon Medina & Sucesores, Inc. v. Custodio, 964 F.2d 32, 46 (1st Cir. 1992)). The "application of this prophylactic rule depends only on whether a specific constitutional provision addresses the type of conduct at issue." Id. (citing Albright, 510 U.S. at 273–75). The success or failure of plaintiff's First Amendment retaliation claim is immaterial to the inapplicability of a substantive due process claim here. See id.

---

[15] (citing S. County Sand & Gravel Co. v. Town of S. Kingstown, 160 F.3d 834, 835 (1st Cir.1998) ("When a specific provision of the Constitution protects individuals against a particular kind of [misconduct] by government actors, individuals seeking redress ... must assert their claims under that particular constitutional rubric instead of invoking the more generalized notion of substantive due process."); County of Sacramento v. Lewis, 523 U.S. 833, 843 (1998); Graham v. Connor, 490 U.S. 386, 395 (1989)).

As such, any substantive due process claim plaintiff may raise holds no water in the instant case, and is accordingly **DISMISSED WITH PREJUDICE**.

### *iii. Concerning Procedural Due Process*

Plaintiff posits "[the] process of summary suspension violated [his] due process rights…". Docket No. 3 at 12. Defendant now moves to dismiss plaintiff's procedural due process claim. See Docket No. 9 at 7-11. He argues, among other things, that plaintiff was not entitled to due process because he was suspended with pay, and that all due process guarantees were nevertheless provided. See id. [16] The court agrees.

To plead a procedural due process violation, plaintiff must first establish a protected liberty or property interest,[17] and, second, a deprivation of that interest without a constitutionally suitable process. See Gonzalez-Droz v. Gonzalez-Colon, 660 F.3d 1, 13 (1st Cir. 2011) (quoting Aponte–Torres v. Univ. of P.R., 445 F.3d 50, 56 (1st Cir.2006)). Plaintiff fails on the first prong: employees do not have a protected property interest in their job functions. See Torres–Martinez v. P.R. Dep't. of Corr., 485 F.3d 19, 24–25 (1st Cir. 2007). See also Rosado De Velez v. Zayas, 328 F.Supp.2d 202, 212 (D.P.R. 2004) (holding that in Puerto Rico public employees have a protected property interest in their continued employment, but not in the functions they perform).

Indeed, public employees do not have a right to the procedural guarantees of due process when they are suspended from their jobs, but with pay. Collins v. Univ. of New Hampshire, 664 F.3d 8, 16–17 (1st Cir. 2011); Torres-Rosado v. Rotger-Sabat, 335 F.3d 1, 9-10 (1st Cir. 2003); Chardon, 2015 WL 4924369, at *6-7.[18] To be sure, when public employees are suspended without

---

[16] Once again, plaintiff completely omits the controlling case law. See Docket No. 21 at 27-28. See also n. 5, *supra*. The applicable case law is not only well-established, plaintiff's counsel are themselves familiar with it, as they have litigated this exact same issue before. See Delgado v. Chardon, No. CIV. 12-1450 MEL, 2015 WL 4924369 (D.P.R. Aug. 18, 2015).

[17] In Puerto Rico, "career" public employees, such as plaintiff, have a vested property right in their continued employment, and cannot be deprived of that right without due process. See Borges–Colón v. De Jesus–Flores, 483 F.3d 1, 8 (1st Cir. 2006); Figueroa–Serrano v. Ramos–Alverio, 221 F.3d 1, 5 (1st Cir. 2000).

[18] "Still, it is conceivable that a very long or open-ended paid suspension might function so much like a termination that some due process protection might attach." Torres-Rosado, 335 F.3d at 10 n.8 (5-month suspension was not too long so as to implicate due process concerns); Collins, 664 F.3d at 17. In Torres-Rosado and Collins, the First Circuit did not suggest what suspension length would call for a due process violation. In Chardon, the court was

pay, due process protections activate not in response to the suspension itself, but to the deprivation of salary. See id. Ergo, because plaintiff was suspended with pay, his procedural due process claim must fail.[19]

Plaintiff also argues his due process rights were breached when he was transferred to an equivalent position in a different school. See Docket 21 at 28. This argument is nonsensical: there is no deprivation of a property interest in a lateral move. Cf. Torres–Martinez, 485 F.3d at 24–25.[20] To wit, after careful review of the complaint, the court cannot make out plaintiff even brings an intelligible procedural due process claim premised on his transfer to an equivalent role in a different school.

As such, plaintiff cannot establish a procedural due process claim upon which relief can be granted.[21] Therefore, defendant's motion to dismiss plaintiff's procedural due process claims is **GRANTED** and those claims are **DISMISSED WITH PREJUDICE.**

*iv. About Time*

Civil rights actions brought under § 1983 do not have a fixed statute of limitations. See Ruiz-Sulsona v. Univ. of Puerto Rico, 334 F.3d 157, 159 (1st Cir. 2003). Instead, courts typically borrow the forum state's statute of limitations for personal injury actions. Id. In Puerto Rico, a one-year statute of limitations attaches to such claims. See P.R. Laws Ann. tit. 31 § 5298. The "institution [of

---

not swayed by a 32-month suspension. See 2015 WL 4924369, at *6. Here, the court is not persuaded by a 10-month-and-19-day suspension. What more, the length of time "without due process" is much shorter than that, given that plaintiff was afforded an opportunity to be heard at some point after he was duly notified of his paid suspension.

[19] Plaintiff was notified of his suspension and afforded the opportunity to be heard. See Docket No. 3 at 7-8, 9-10. Such guarantees typically satisfy the Fourteenth Amendment. See Quiñones v. Puerto Rico Elec. Power Auth., 199 F. Supp. 3d 474, 490 (D.P.R. 2016) (no due process violation where employees summarily suspended with pay were given notice of the charges against them, as well as an opportunity to be heard, and then subsequently reinstalled to their positions)

[20] Some transfers can materially change the conditions of a public worker's employ. See Gu v. Boston Police Dep't, 312 F.3d 6, 14 (1st Cir. 2002). Still, "[t]he clear trend of authority is to hold that a purely lateral transfer, that is, a transfer that does not involve a demotion in form or substance, cannot rise to the level of a materially adverse employment action." Marrero v. Goya of P.R., Inc., 304 F.3d 7, 23 (1st Cir. 2002) (quoting Ledergerber v. Stangler, 122 F.3d 1142, 1144 (8th Cir. 1997)). It would be an impossibly long stretch to hold that a lateral transfer such as plaintiff's constitutes a deprivation of a protected property interest. Cf. Torres–Martinez, 485 F.3d at 24–25.

[21] To the extent that plaintiff argues that "no official notification was ever sent by certified mail, as required," Docket No. 3 at 10, the court must point out that the Fourteenth Amendment makes no such requirement. See Torres–Rosado, 335 F.3d at 10 ("the federal Due Process Clause does not incorporate the particular procedural structures enacted by the state or local governments; these claims should be pursued, if at all, under [state] law"); Lopez Quinonez v. Puerto Rico Nat. Guard, 488 F. Supp. 2d 112, 119 (D.P.R. 2007).

the claim] before the courts" tolls that one-year period. P.R. Laws Ann. tit. 31 § 5303.

While the statute of limitations length stems from state law, "[f]ederal law determines the date on which the claim accrued." Rodríguez García v. Municipality of Caguas, 354 F. 3d 91, 96 (1st Cir. 2004) (citations omitted). The one-year statute of limitations "begins running one day after the date of accrual, which is the date plaintiff knew or had reason to know of the injury." Benitez–Pons v. Commonwealth of P.R., 136 F.3d 54, 59 (1st Cir. 1998) (citations omitted).

Defendant posits some of plaintiff's § 1983 claims should be dismissed because they are time-barred. See Docket No. 9 at 11-13. Plaintiff argues that the violations were "continuous," and thus timely. See Docket No. 21 at 28-30. To evaluate the timeliness of plaintiff's § 1983 claims, the court must distinguish between four separate alleged events: (1) plaintiff's suspension, see Docket No. 3 at 7, 9, (2) plaintiff's transfer, see id. at 10-11, (3) a string of false accusations and frivolous complaints filed in state court to harass plaintiff, see id. at 6, and (4) a series of calls and personal visits "meant" to intimidate or "pressure" plaintiff, see id. at 6-7.

*1.   Suspension and Transfer*

Plaintiff filed the above-captioned civil suit on November 16, 2016. See Docket No. 1. His § 1983 claims must observe a one-year statute of limitations. See Ruiz-Sulsona, 334 F.3d at 159. All claims that accrued prior to November 16, 2015 – as is the case for all of plaintiff's claims -- would then presumably be time barred. However, plaintiff tolled the statute of limitations when he filed suit in state court on September 26, 2012. See P.R. Laws Ann. tit. 31 § 5303; Docket No. 21 at 28. Thus, to be timely, the claims must have accrued a year earlier, on or after September 26, 2011.

Defendant allegedly notified plaintiff of his suspension on October 7, 2011 and of his transfer on September 7, 2012. See Docket No. 3 at 7, 11. Plaintiff's § 1983 claims as pertaining to those events are consequently timely – defendant himself concedes that point in his motion to dismiss. See Docket No. 9 at 13.

### 2.  False Accusations and Frivolous Complaints

Plaintiff alleges that, due to the actions of defendant, he was on the receiving end of a string of false accusations and frivolous complaints filed in state court. <u>See</u> Docket No. 3 at 6. However, plaintiff does not plead a time for when these accusations and complaints allegedly took place. Because the cause of action under which plaintiff files suit – § 1983 – "has been created by a statute that extinguishes the right of action as well as the remedy if the suit is not brought within a certain period," a specific allegation of time is required in the pleadings. 5A CHARLES ALAN WRIGHT & ARTHUR R. MILLER, FEDERAL PRACTICE AND PROCEDURE § 1309 (3d ed. 2004). However, dismissal is very rarely the prescribed medicine for a failure to plead time. Instead, "if specific allegations of time and place are required or desirable but none are pleaded, courts will generally grant a motion for a more definite statement and give a party a reasonable length of time to cure the defect rather than dismiss the complaint." <u>Id.</u> <u>See also</u> Fed. R. Civ. P. 12(e).

Ordering a more definite statement here is well within the court's powers. Indeed, when, as here, the court cannot reliably infer the time of the events from the pleadings as they stand, "the court may act under Rule 12(b)(6) or Rule 12(e), whichever is appropriate, without regard to how the motion is denominated." 5C CHARLES ALAN WRIGHT & ARTHUR R. MILLER, FEDERAL PRACTICE AND PROCEDURE § 1376 (3d ed. 2004). As such, the court orders plaintiff to provide a more definite statement in order to cure the defect.[22]

### 3.  Calls and Visits

Plaintiff also claims that, around May 2010, several unspecified individuals acting in concert with defendant called and visited him to intimidate and "pressure" him (presumably to stop speaking publicly). <u>See</u> Docket No. 3 at 6-7. These calls and visits took place well over one year before plaintiff filed suit in state court. Thus, a § 1983 claim based on these events would ordinarily

---

[22] The court must stress that the order to provide a more definite statement will be limited in scope: plaintiff will only supplement the amended complaint to include time allegations for the purported incidents of false accusations and frivolous complaints filed in state court. Plaintiff will have a period of thirty days, once the stay currently imposed on the case is lifted, to cure the defect.

be time barred. Still, plaintiff argues that these claims are not time-barred because they fall within the statute of limitations under the continuing violation doctrine. See Docket No. 21 at 30.

Courts must take great care to distinguish between continuing violations and discrete acts when calculating statutes of limitations in civil rights cases arising under § 1983. See generally Moran Vega v. Cruz Burgos, 537 F.3d 14, 20 (1st Cir. 2008).

Continuing violations "involve an interlinked succession of related events or a fully-integrated course of conduct." Mack v. Great Atlantic and Pac. Tea Co., 871 F.2d 179, 183 (1st Cir. 1989). They "allo[w] an employee to seek damages for otherwise time-barred allegations if they are deemed part of an ongoing series of discriminatory acts and there is some violation within the statute of limitations period that anchors the earlier claims." Loubriel v. Fondo del Seguro del Estado, 694 F.3d 139, 144 (1st Cir. 2012) (citing O'Rourke v. City of Providence, 235 F.3d 713, 731 (1st Cir. 2001); Cordero–Suarez v. Rodriguez, 689 F.3d 77, 83 (1st Cir. 2012)). On the other hand, a discrete act refers to an individual incident significant enough to "constitut[e] a separate actionable unlawful employment practice…" Nat'l R.R. Passenger Corp. v. Morgan, 536 U.S. 101, 114 (2002). Courts do not consider discrete acts a part of continuing violations. Instead, "[e]ach discrete discriminatory act starts a new clock for filing charges alleging that act." Id. at 113.  Events such as terminations, suspensions, and transfers are, decidedly, discrete acts. See id. at 114.

Plaintiff's argument would indeed be availing if "there is some violation within the statute of limitations period that anchors the earlier claims." Loubriel, 694 F.3d at 144 (citing O'Rourke, 235 F.3d at 731; Cordero–Suarez, 689 F.3d at 83). However, the two events that the court has found to fall within the statute of limitations period – the suspension and the transfer – cannot anchor the earlier claims because they are discrete acts. See Morgan, 536 U.S. at 114.

Notwithstanding, the court cannot yet rule on this issue. The intimidating calls and visits and the false accusations and frivolous lawsuits, all forms of harassment against plaintiff, "involve an interlinked succession of related events or a fully-integrated course of conduct." Mack, 871 F.2d at 183. That is, each of these acts is one in a series of related harassment acts, all allegedly

perpetrated by or attributable to defendant. As such, they, amongst themselves, constitute continuing violations. Nevertheless, because plaintiff has not made time allegations as to the purported false accusations and frivolous lawsuits, the court cannot, at this time, determine whether "there is some violation within the statute of limitations period that anchors the earlier claims." Loubriel, 694 F.3d at 144 (citing O'Rourke, 235 F.3d at 731: Cordero–Suarez, 689 F.3d at 83). Once plaintiff satisfies the order for a more definite statement, the court will be able to separate wheat from chaff.

Plaintiff's § 1983 claims based on his suspension and subsequent transfer are timely. Defendant himself concedes the point in his motion to dismiss. See Docket No. 9 at 13. But, the court cannot at this time rule on the timeliness of plaintiff's § 1983 claims premised on the accusations, complaints, calls and visits because plaintiff has not made time allegations as to when the accusations and complaints took place. As such, this court will **DENY** defendant's motion to dismiss plaintiff's § 1983 claims at this juncture, and order plaintiff to cure the defect in his pleadings by incorporating the time allegations above specified. If so appropriate, defendants can later renew a challenge to the timeliness of plaintiff's § 1983 claims.

**B. Plaintiff's State Law Claims**

Plaintiff files suit under Puerto Rico Public Laws No. 115 of December 20, 1991 and No. 426 of November 7, 2000. See Docket No. 3 at 12-13. Defendant moves to dismiss plaintiff's claims under both those causes of action.[23] See Docket No. 9 at 13-16. However, plaintiff states in his response that he does not object to the dismissal of these claims. See Docket No. 21 at 2, n.3. As such, they are **DISMISSED WITHOUT PREJUDICE**.

### v. CONCLUSION

For the foregoing reasons, defendant's motion to dismiss is **GRANTED IN PART**. Plaintiff's First Amendment claims regarding the unprotected expressions he made at the Parents

---

[23] Plaintiff also sues under Puerto Rico's general tort statute, Article 1802 of the Puerto Rico Civil Code. See Docket No. 3 at 12-13. Defendant does not move to dismiss that cause of action.

Assembly, the e-mails he sent, the complaints he filed with OMEP, and the complaints he filed against certain board members and teachers are all **DISMISSED WITHOUT PREJUDICE**. Plaintiff's Fourteenth Amendment due process claims are **DISMISSED WITH PREJUDICE.** Plaintiff's claims under Puerto Rico Public Laws No. 115 of December 20, 1991 and No. 426 of November 7, 2000 are also **DISMISSED WITHOUT PREJUDICE**, in accordance with plaintiff's non-objection thereto.

Defendant's motion to dismiss is **DENIED IN PART** insofar as some of plaintiff's First Amendment retaliation claims survive because he properly pleads he engaged in protected speech regarding the open letter he penned, the expressions he made to NotiCel, and the complaints he filed with OSHA. Defendant's contention that plaintiff's § 1983 claims are time-barred also fails.

The court also **ORDERS** plaintiff to submit **A MORE DEFINITE STATEMENT** providing time allegations for the purported incidents of false accusations and frivolous complaints filed in state court.

**IT IS SO ORDERED**.

In San Juan, Puerto Rico, March 22, 2019.

S/ JUAN M. PÉREZ-GIMÉNEZ
**JUAN M. PEREZ-GIMENEZ**
**SENIOR U.S. DISTRICT JUDGE**
